UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
CHARLENE JOHNSON,                       )
Parent and Next Friend of F.J., a minor, and )
                                        )
F.J.,                                   )
Individually,                           )    Civil Action No. 12-0352 (RBW)
                                        )
            Plaintiffs,                 )
                                        )
        v.                              )
                                        )
THE DISTRICT OF COLUMBIA,               )
A Municipal Corporation,                )
                                        )
            Defendants.                 )
_____ )

**MEMORANDUM OPINION**

Plaintiffs Charlene Johnson, on behalf of her minor child, F.J., and F.J. individually, bring claims under the Individuals with Disabilities Education Act (the "IDEA"), 20 U.S.C. §§ 1400–1491 (2012), alleging that the District of Columbia failed to provide F.J. with a free appropriate public education and seeking reimbursement for all expenses arising from F.J.'s placement at a private school. Complaint for Declaratory Judgment & Inju[n]ctive and Other Relief ("Compl.") ¶¶ 23–39. Currently before the Court are the parties' cross motions for summary judgment. After carefully considering the parties' submissions and the administrative record in this case,[1] the Court concludes for the reasons below that it must grant the defendant's motion for summary judgment.

---

[1] In addition to the filings already referenced, including the Administrative Record ("A.R."), the Court considered the following documents in rendering its decision: (1) the Plaintiffs' Memor[an]dum of Points and Authorities In Support of Plaintiffs' Motion for Summary Judgment ("Pls.' Mem."); (2) the Memorandum in Support of Defendant's Cross Motion for Summary Judgment and Opposition to Plaintiffs' Motion for Summary Judgment

(continued . . .)

## I. Statutory Background

Under the IDEA, states and territories, including the District of Columbia, that accept federal educational funds must provide a free appropriate public education ("FAPE") to students with disabilities residing within their borders. See 20 U.S.C. § 1412(a)(1)(A). The IDEA defines a FAPE as an education which is "[(A)] provided at public expense, under public supervision and direction, and without charge; (B) meet[s] the standards of the State educational agency; (C) include[s] an appropriate preschool, elementary school, or secondary school education in the State involved; and (D) [is] provided in conformity with the individualized education program required" under other provisions of the IDEA. Id. § 1401(9). Once a student is deemed eligible to receive services under the IDEA, a team which includes the parent or parents of the student, certain teachers, and a representative of the local educational agency develops an individualized education program ("IEP") for the student in accordance with the requirements of the IDEA. Id. §§ 1414(d)(1)(A), (B). In addition to developing the IEP, the student's team determines an appropriate educational placement for the student. See id. § 1414(e).

The IDEA provides that a parent may present a complaint to an educational agency "with respect to any matter relating to the identification, evaluation, or educational placement of the child, or the provision of a free appropriate public education to such child" and receive a hearing on the complaint conducted by an independent hearing officer. Id. §§ 1415(b)(6), (f). A party who is dissatisfied with the decision of the hearing officer may file a civil action in federal

---

( . . . continued)
("Def.'s Mem."); (3) the Plaintiffs' Memorandum of Points and Authorities in Opposition to the Defendant's Motion for Summary Judgment and in Reply to the Defendant's Opposition to Plaintiffs' Motion for Summary Judgment ("Pls.' Opp'n"); and (4) the Defendant's Reply to Plaintiffs' Opposition to Defendant's Cross Motion for Summary Judgment ("Def.'s Reply").

district court seeking review of the hearing officer's decision. Id. § 1415(i)(2)(A). If the hearing officer or district court determines that the agency failed to provide the student with a FAPE, the officer or court may require the agency to reimburse the parents of the child for the cost of enrollment at a private institution. Id. § 1412(a)(10)(C)(ii).

## II. Factual Background

F.J. is a fourteen-year-old child who has been deemed eligible to receive services under the IDEA, having been diagnosed "as a student with an emotional disturbance," A.R. at 19, and she was therefore receiving services through the District of Columbia Public Schools ("DCPS") until the 2011–12 school year, see Pls.' Mem. at 4; Def.'s Mem. at 4–5. During the immediately preceeding school year, F.J. attended Hamilton Center at the recommendation of her IEP team ("Team"). A.R. at 47. On April 27, 2011, F.J.'s Team developed her current IEP, see Pls.' Mem. at 4; Def.'s Mem. at 4; see also A.R. at 67, which requires F.J. to receive thirty-one hours per week of "[s]pecialized [i]nstruction" and one hour per week of "[b]ehavioral [s]upport [s]ervices" in an "[o]utside [g]eneral [e]ducation" setting, A.R. at 73.

At a Team meeting on June 9, 2011, the plaintiffs were advised that Hamilton Center was closing and that DCPS proposed placing F.J. in the program for students with emotional disturbance at Ballou Senior High School ("Ballou"). See Pls.' Mem. at 4; Def.'s Mem. at 5; A.R. at 85, 253. Both Ms. Johnson and F.J.'s advocate objected to the proposed placement at Ballou. A.R. at 86. Their objections notwithstanding, DCPS issued a written notice assigning F.J. to Ballou for the 2011–12 school year. See A.R. at 87–88. The plaintiffs rejected Ballou as an appropriate placement, and Ms. Johnson instead unilaterally placed F.J. at the Accotink Academy ("Accotink"), for the 2011–12 school year. Pls.' Mem. at 4; Def.'s Mem. at 5; see A.R. at 260.

3

The plaintiffs filed an administrative complaint with DCPS on September 22, 2011, alleging that the District failed to provide F.J. with a FAPE in violation of the IDEA and seeking reimbursement for F.J.'s placement at Accotink. A.R. at 89–91. At the administrative hearing, the plaintiffs argued that Ballou was not an appropriate placement because it is unable to provide the thirty-one hours of specialized instruction required by F.J.'s IEP, and because the school lacks properly certified teachers to allow F.J. to earn all of the credits needed to graduate.[2] A.R. at 90, 150–51.

The hearing officer rejected the plaintiffs' arguments, finding that DCPS' proposed placement at Ballou was appropriate because Ballou "can substantially implement [F.J.'s] IEP by providing a full-time out of general education separate [emotional disturbance] program with approximately 28.25 hours per week of instruction," and therefore, the plaintiffs were not entitled to reimbursement for the cost for F.J. attending Accotink. A.R. at 7–8. The hearing officer "acknowledge[d] that [F.J.'s] IEP calls for 31 hours of specialized instruction per week," but found that "the difference between what the IEP requires and what [Ballou] can offer is <u>de minimis</u> under the circumstances . . . since [F.J.] would be placed in the full-time out of general education setting her IEP team envisioned." A.R. at 7.

The plaintiffs subsequently sought review of the hearing officer's decision before this Court, <u>see</u> Compl. ¶¶ 23–39, and the parties have now both moved for summary judgment.

---

[2] During the administrative hearing, the plaintiffs also presented several arguments regarding F.J.'s use of a dedicated aide. <u>See, e.g.</u>, A.R. at 395 (arguing that Accotink is a less restrictive environment than Ballou because F.J. does not require a dedicated aide at Accotink, but, the plaintiffs argued, would likely need one if she attended Ballou because she used an aide when she attended Hamilton). The plaintiffs have not sought review of the hearing officer's rulings on the use of an aide, however, and thus the Court need not address the hearing officer's determinations on this point.

## III. Standard of Review

Summary judgment is proper when the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In IDEA cases in which "neither party seeks to present additional evidence, a motion for summary judgment 'operates as a motion for judgment based on the evidence comprising the record.'" Parker v. Friendship Edison Pub. Charter Sch., 577 F. Supp. 2d 68, 72 (D.D.C. 2008) (citations omitted).

A district court reviewing the findings and decision of an administrative hearing officer "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." 20 U.S.C. § 1415(i)(2)(C). Under this standard, the reviewing court owes the hearing officer "'less deference than is conventional' in administrative proceedings." Reid ex rel. Reid v. Dist. of Columbia, 401 F.3d 516, 521 (D.C. Cir. 2005) (quoting Kerkam v. McKenzie, 862 F.2d 884, 887 (D.C. Cir. 1989) ("Kerkam I")). And "a hearing decision 'without reasoned and specific findings deserves little deference.'" Id. (quoting Kerkam v. Superintendent, D.C. Pub. Schs., 931 F.2d 84, 87 (D.C. Cir. 1991) ("Kerkam II")).

Nevertheless, "the provision that a reviewing court base its decision on the 'preponderance of the evidence' is by no means an invitation to the courts to substitute their own notions of sound educational policy for those of the school authorities which they review." Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley, 458 U.S. 176, 206 (1982) (internal citations omitted). Rather, the party challenging a hearing officer's determination must "at least take on the burden of persuading the court that the hearing officer

was wrong, and . . . a court upsetting the officer's decision must at least explain its basis for doing so." Reid, 401 F.3d at 521 (quoting Kerkam I, 862 F.2d at 887). Moreover, "'[f]actual findings from the administrative proceeding are to be considered prima facie correct.'" Roark ex rel. Roark v. Dist. of Columbia, 460 F. Supp. 2d 32, 38 (D.D.C. 2006) (quoting S.H. v. State–Operated Sch. Dist. of the City of Newark, 336 F.3d 260, 270 (3d Cir. 2003)). And a court must "defer to the [hearing officer's] factual findings unless it can point to contrary nontestimonial extrinsic evidence on the record." Savoy v. Dist. of Columbia, 844 F. Supp. 2d 23, 30 (D.D.C. 2012) (quoting S.H., 336 F.3d at 270).

### IV. Legal Analysis

Because the plaintiffs are entitled to reimbursement for F.J.'s education at Accotink only if the defendant has deprived F.J. of a FAPE, the Court begins its analysis with that assessment. See 20 U.S.C. §§ 1412(a)(10)(C)(ii). In order to provide a student with a FAPE, the student's education must be "provided in conformity with the IEP" developed for her, and therefore, the educational agency must place the student in a setting that is capable of fulfilling the student's IEP. See id. § 1401(9); 34 C.F.R. § 300.116 (2012) (providing that a child's educational placement "[i]s based on the child's IEP"); O.O. ex rel. Pabo v. Dist. of Columbia, 573 F. Supp. 2d 41, 53 (D.D.C. 2008) (citing § 1401(9)).

As an initial matter, the parties disagree as to the standard the Court must apply in assessing the plaintiffs' claim that DCPS deprived F.J. of a FAPE. Citing Hinson v. Merritt Educational Center, 579 F. Supp. 2d 89 (D.D.C. 2008), the plaintiffs assert that "the Hearing Officer incorrectly imported the standard applicable to claims of a failure to implement an IEP," and assessed whether Ballou was able to substantially implement the IEP, whereas "the proper standard . . . is whether or not it can implement the IEP as written." Pls.' Mem. at 8–9. The

6

defendant, on the other hand, urges the Court to apply the same standard used by the hearing officer and to require the plaintiffs to show "'more than a de minimis failure to implement all elements of [the] IEP'" in order to succeed on their claim. Def.'s Mem. at 13–14 (quoting Catalan ex rel. E.C. v. Dist. of Columbia, 478 F. Supp. 2d 73, 75 (D.D.C. 2007)). The Court agrees with the defendant.

The plaintiffs have misread Hinson v. Merritt Educational Center as requiring that a student's placement conform to the IEP "as written." See Pls.' Mem. at 7–9; Pls.' Opp'n at 5–6. To be sure, in Hinson, another member of this Court held that the appropriateness of the student's placement must be evaluated with reference to the IEP "as written," Hinson 579 F. Supp. 2d at 104, but the plaintiffs' interpretation of this phrase is incorrect when the Court's words are placed in context. In Hinson, the plaintiff argued that the school designated by DCPS was an inappropriate placement because it could not meet the plaintiff's proposed standards for her child's IEP. Id. The Court's conclusion that "to show that placement is inappropriate, plaintiff must show that [the school] is unable to implement the IEP as written," therefore refers to evaluating a placement from the standpoint of how the IEP is actually drafted, and not from the perspective of how a parent believes the IEP ought to be written. Id. Hinson does not, as the plaintiffs suggest, support the proposition that a proposed placement is appropriate only if the school is capable of fulfilling every requirement of the IEP exactly as written. The plaintiffs cite to no other authority to support their argument that a placement must be able to satisfy all of the requirements of the IEP "as written," and the Court's research has found none.

The standard used by the hearing officer and pressed by the District is the standard formulated by the Fifth Circuit for failure-to-implement claims in Houston Independent School District v. Bobby R., 200 F.3d 341 (5th Cir. 2000), and widely adopted by other federal courts.

7

See, e.g., Sumter Cnty. Sch. Dist. 17 v. Heffernan, 642 F.3d 478, 484 (4th Cir. 2011); Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J, 502 F.3d 811, 821–22 (9th Cir. 2007); Melissa S. v. Sch. Dist. of Pittsburgh, 183 F. App'x 184, 187 (3d Cir. 2006); Garmany v. Dist. of Columbia, __ F. Supp. 2d __, __, 2013 WL 1291289, at *3 (D.D.C. 2013); Savoy, 844 F. Supp. 2d at 31. This standard requires that a plaintiff "must show more than a de minimis failure to implement all elements of [the student's] IEP, and instead, must demonstrate that the school board or other authorities failed to implement substantial or significant provisions of the IEP" in order to prevail on a failure-to-implement claim. Catalan, 478 F. Supp. 2d at 75 (quoting Bobby R., 200 F.3d at 349), aff'd sub nom. E.C. ex rel. Catalan v. Dist. of Columbia, No. 07-7070, 2007 U.S. App. LEXIS 21928 (D.C. Cir. Sept. 11, 2007). Courts applying this standard "have focused on the proportion of services mandated to those actually provided, and the goal and import (as articulated in the IEP) of the specific service that was withheld." Wilson v. Dist. of Columbia, 770 F. Supp. 2d 270, 275 (D.D.C. 2011) (citations omitted).

The defendant's view finds support in both logic and case law. In order to provide a FAPE, after an IEP is designed, the District "must . . . implement the IEP, which includes placement in a school that can fulfill the requirements set forth in the IEP." Pabo, 573 F. Supp. 2d at 53 (citing § 1401(9)); see also Savoy, 844 F. Supp. 2d at 31 (characterizing the plaintiff's claims that the school to which the student was assigned after he aged out of his prior placement "failed to provide the number of hours and types of services required by [the student's] IEP" as failure-to-implement claims). At bottom, an allegation that a student's placement is not appropriate because the school cannot implement one or more provisions of that student's IEP is a claim that the educational authority has failed to properly implement the student's IEP by placing the student at a school which is capable of implementing it. The fact that the plaintiffs'

8

claim here is a "prospective" challenge, which arises "at [a] different point[] in the process of implementing and developing an IEP" from a claim which alleges that a school has failed to implement a student's IEP during the student's attendance there, Pls.' Opp'n at 5, is a distinction without a difference. The Court sees no logical reason to require perfect compliance with a student's IEP in determining an appropriate placement when, as the plaintiffs concede, imperfect compliance with the IEP would be permissible once the student begins attending the school. See id. Accordingly, because placing a student in an appropriate educational setting is an element of implementing the IEP, the Court will assess the appropriateness of F.J.'s proposed placement at Ballou by determining whether Ballou was capable of substantially implementing F.J.'s IEP.

The plaintiffs contend that F.J.'s placement at Ballou is inappropriate because Ballou is incapable of providing F.J. with the thirty-one hours of specialized instruction required by her IEP and does not have the necessary staff to provide adequate instruction in Spanish and physical education, both required for F.J. to receive a diploma. Pls.' Mem. at 8–10. Shamele Straughter, Ballou's Special Education Coordinator, confirmed that students in Ballou's program are in school for a total of 32.5 hours each week but receive only 28.25 hours per week of actual instruction after breaks are subtracted. See A.R. at 363–64. Ms. Straughter testified, however, that "when individuals create IEPs that are 32 hours, what they are actually trying to do is ensure that [the students] do not engage with their non-disabled peers during non-instructional time[,] which include[s] lunch and transition." A.R. at 359–60. The plaintiffs attempt to discredit this testimony by arguing that such an interpretation is inconsistent with the generally understood meaning of "instruction" and noting that Ms. Straughter was not part of the Team that developed F.J.'s IEP, see Pls.' Opp'n at 2–3, but they failed to offer any evidence that contradicted Ms. Straughter's hearing testimony.

9

In any event, even if F.J.'s IEP is read as calling for precisely thirty-one hours of instructional time, the difference between thirty-one and a little over twenty-eight does not constitute a material deviation from the requirements of the IEP. Admittedly, a deviation in hours of instruction can, in certain circumstances, be a substantial deviation resulting in the denial of a FAPE. See, e.g., Van Duyn, 502 F.3d at 823 (finding that a 50% deprivation of hours was material); see also Heffernan, 642 F.3d at 481 (finding that providing seven and a half to ten hours of the required fifteen hours, in combination with the school's failure to use the teaching method specified in the IEP, was material). However, a comparison of the hours that would have been provided by Ballou with the hours mandated by the IEP reveals that the deviation alleged here is relatively slight, as Ballou was capable of providing F.J. with 91% of the hours of specialized instruction required by her IEP. Other members of this Court have reached the same conclusion when faced with similar deviations. See, e.g., Savoy, 844 F. Supp. 2d at 34 (finding that a difference of less than one hour per week was not material); Catalan, 478 F. Supp. 2d at 76 (holding that failure to receive "a handful of sessions" of therapy and therapist's shortening of several other sessions was not material). The situation here is in stark contrast to the losses in Sumter (50–67% of the hours required by the IEP per week) and Van Duyn (50% of hours required by the IEP). Moreover, the Court notes that the private placement selected for F.J. (Accotink), provides similar hours as Ballou—30.5 hours of school per week and 28.33 hours of actual instruction. A.R. at 187–88. While not dispositive, the fact that F.J. received less than the number of specialized instruction hours called for by the IEP at Accotink and approximately the same number of hours she would have received at Ballou, is proof that the discrepancy in hours Ballou would have provided is not material.

In addition to the deprivation in hours of specialized instruction, the plaintiffs contend that Ballou was an inappropriate setting because it cannot provide specialized instruction in Spanish and physical education, two classes F.J. will need to take to earn her high school diploma, neither of which she is currently enrolled in. Pls.' Mem. at 10. During the administrative hearing, Ms. Straughter testified that F.J. will need to take a foreign language class and physical education in order to earn her high school diploma, but that she is not currently eligible to take either class. A.R. at 358. She admitted that Ballou does not currently have a special education teacher for the Spanish or physical education classes, but stated that the general education teachers who teach those courses consult with special education teachers "to ensure that accommodations are being made," and that they are currently hiring for an additional special education teacher. A.R. at 357–59. Relying on Ms. Straughter's testimony, the hearing officer found that "all of [the emotional disturbance students at Ballou] are on a diploma track" and that although Ballou does not currently have special education teachers for Spanish and physical education, "there are plans to eventually get a special education teacher for those classes." A.R. at 6. The hearing officer also credited Ms. Straughter's testimony that F.J. is not currently eligible to take either class. Id.

The plaintiffs have proffered nothing to contradict Ms. Straughter's testimony or the hearing officer's conclusions on this point, and, indeed, expressly concede that F.J. is not currently enrolled in either class. Pls.' Mem. at 10. The Court has found no evidence in the record that would cause it to doubt the veracity of Ms. Straughter's statements regarding hiring plans for the Ballou program or F.J.'s current eligibility to take Spanish and physical education. Consequently, the Court cannot conclude <u>at this time</u> that Ballou's failure to provide a special education teacher for these two courses constitutes a failure to implement F.J.'s IEP because it is

11

likely that Ballou will be able to provide specialized instruction in these courses by the time F.J. is able to take them.[3]

### V. Conclusion

For the foregoing reasons, the Court concludes that the discrepancy between the amount of specialized instruction offered by Ballou and the amount required by F.J.'s IEP is not material and that Ballou's lack of specialized instruction in Spanish and physical education does not render it an inappropriate placement at this time. Thus, the Court finds that DCPS provided F.J. with a FAPE in accordance with its obligations under the IDEA. Consequently, the plaintiffs are not entitled to reimbursement for F.J.'s placement at Accotink. See 20 U.S.C. § 1412(a)(10)(C)(ii); Florence Cnty. Sch. Dist. Four v. Carter, 510 U.S. 7, 15 (1993) (citation omitted) (holding that parents "are entitled to reimbursement only if a federal court concludes that both the public placement violated IDEA and that the private school placement was proper under the Act" and those who "unilaterally change their child's placement . . . do so at their own financial risk"). Accordingly, the defendant's motion for summary judgment is granted and the plaintiffs' motion for summary judgment is denied.

**SO ORDERED** this 27th day of August, 2013.[4]

REGGIE B. WALTON<br>
United States District Judge

---

[3] The Court finds that Ballou's lack of specialized instruction in Spanish and physical education does not constitute a denial of a FAPE at this time because F.J. is not currently eligible to take either class. Whether a deficiency in resources which prevents a student from earning a high school diploma violates the IDEA, however, presents an entirely different question that must be left for another day, should the District fail to follow through with its hiring plans once F.J. is eligible to take these courses.

[4] The Court will contemporaneously issue an Order consistent with this Memorandum Opinion.